puUNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>PENG ZHANG,<br><br>Debtor | Chapter 13<br>Case No. 24-40636-EDK |
| DAVID A. MAWHINNEY, in his capacity as CHAPTER 13 TRUSTEE and not individually,<br><br>Plaintiff<br><br>v.<br><br>ELITE INVESTMENT (BVI) LIMITED and<br><br>CHENGJUN FU<br><br>Defendants | Adversary Proceeding No. |

**COMPLAINT**

David A. Mawhinney, the Standing Chapter 13 Trustee appointed in the above-captioned chapter 13 case (the "Plaintiff"), brings this Complaint against Elite Investment (BVI) Limited ("Elite Investment") and Chengjun Fu, ("Defendant Fu" and, together with Elite Investment, the "Defendants") and alleges the following based upon his investigation to date, the admissions made by the Debtor and Elite Investment contained within pleadings filed in the chapter 13 case, and upon information and belief as to all other matters.

1

**JURISDICTION AND VENUE**

1. This Adversary Proceeding relates to the Debtor's chapter 13 case filed with this Court on June 19, 2024.

2. The Plaintiff brings this Complaint pursuant to Rules 7001(a) and 7001(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 105(a), 502, 510(c), 548, 550, and 1302 of the Bankruptcy Code.

3. This Adversary Complaint is a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (H), and (O).

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 201 of the United States District Court for the District of Massachusetts.

5. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409, and venue in this Court is consistent with the interests of justice, judicial economy, and fairness.

6. Plaintiff consents to the entry of a final order or judgment by the Court on these claims to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PARTIES**

7. The Plaintiff in this case is David A. Mawhinney, in his capacity as the appointed chapter 13 trustee in the bankruptcy case of debtor, Peng Zhang (the "Debtor") currently pending before this Court, Case No. 24-40636-EDK, and not in his personal capacity.

8. Defendant Elite Investment is a company with a registered office located at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands.

9. Defendant Fu is an individual with an address of 45 Skagit Key, Bellevue, Washington, 98006.

**FACTUAL BACKGROUND**

10. On November 6, 2017, the Debtor filed Articles of Organization with the Secretary of the Commonwealth of Massachusetts establishing the corporation, Subsea Investment Inc. ("Subsea"). The Articles of Organization authorized 275,000 shares and named the Debtor as president, treasurer, secretary, and director of Subsea. The Articles of Organization listed Subsea's registered office as the Debtor's primary residence in Northborough, Massachusetts.

11. Either contemporaneously with the establishment of Subsea or no later than the fall of 2018, Defendant Fu approached the Debtor about using Subsea to acquire commercial property in Worcester, Massachusetts. Upon information and belief, as alleged by the Debtor in the *Debtor's Objection to Elite Investment (BVI) Limited's Proof of Claim* filed in the bankruptcy case at Docket Entry No. 152 (the "Claim Objection"), Defendant Fu invested $3,000,000.00 in funds in connection with Subsea's acquisition of 27 and 33-39 Waldo Street, Worcester, Massachusetts ("Waldo Street"), 142 Commercial Street, Worcester, Massachusetts ("Commercial Street"), and 335-339 Main Street, Worcester Massachusetts ("Main Street" and, together with Waldo Street and Commercial Street, the "Worcester Properties").

12. Upon information and belief, Elite Investment held all the shares in Subsea and, through this corporate structure, Elite Investment owned and controlled the Worcester Properties.

13. Upon information and belief, the initial investment in the Worcester Properties was approximately $6,200,000.00 consisting of Defendant Fu's investment of $3,000,000.00 and a $3,200,000.00 loan from Hometown Bank to Subsea (the "Hometown Bank Loan"). Although the

3

Debtor did not invest any funds into the acquisition of the Worcester Properties, he did execute a personal guaranty of the Hometown Bank Loan.

14. To secure the Hometown Bank Loan, Subsea executed a mortgage in favor of Hometown Bank (the "Mortgage"). *See* County Registry of Deeds at Book 59697 Page 133. The Mortgage references a Term Promissory Note for $3,200,000.00.

15. On or about November 15, 2018, Subsea acquired title to the Worcester Properties. *See* Worcester County Registry of Deeds, Book 59697, Page 127 (Deed for Waldo Street/Commercial Street with stated consideration of $3.2 million) and Book 59697, Page 155 (Deed for Main Street with stated consideration of $2.8 million).

16. The Debtor managed the Worcester Properties on behalf of Subsea from 2018 to August 2021. *See* Claim Objection, ¶ 3.

17. In September 2021, Defendant Fu began to take more direct control over his investment. On September 1, 2021, Defendant Fu caused to be filed with the Secretary of the Commonwealth: (i) Articles of Amendment changing the name of Subsea to Newelite Investment Inc. ("Newelite"); (ii) a Statement of Change of Supplemental Information with the Secretary of the Commonwealth removing the Debtor from all the officer positions and naming Defendant Fu as Subsea's President, Treasurer, Secretary, and Director; and (iii) a Statement of Change of Registered office, changing Subsea's registered office from 339 Main Street, Worcester, to the Waltham address of the law firm Lion's Law P.C. ("Loin's Law").

18. Upon information and belief Lion's Law has represented Defendant Fu and his interests at all relevant times in connection with the Worcester Properties and any claims Defendant Fu has against the Debtor.

19. Following Defendant Fu's formal takeover, Subsea/Newelite appears to have experienced financial distress. *See* Claim Objection, ¶¶ 4-6 (the Debtor alleges that Defendant Fu's relationship with the property manager he had brought in "went sour").

20. On February 13, 2022, Defendant Fu caused Newelite to transfer $400,000.00 to himself. The transfer would be characterized, *post facto*, as a "loan" from Newelite to Defendant Fu, which the Debtor would later agree to assume as part of the purchase price for Newelite's equity. In other words, Defendant Fu withdrew cash from Newelite, likely contributing to its financial distress, and made the Debtor assume the liability for repayment as part of Defendant Fu's exit from the investment.

21. At some point in 2022, Defendant Fu convinced the Debtor to purchase Newelite from Elite Investments. This transaction was designed to buy out Defendant Fu, facilitating his exit from the failing investment.

22. On October 20, 2022, the Debtor signed an Equity Interest Transfer Agreement with Elite Investment. Upon information and belief, a true and accurate copy of the Equity Interest Transfer Agreement is attached to Elite Investment's Proof of Claim No. 15-1. The stated purchase price for Newelite's equity was $3,860,000.00 (the "Purchase Price"). Upon information and belief, this was more than the $3,000,000.00 Defendant Fu had initially invested in the project.

23. At the time he signed the Equity Interest Transfer Agreement, undertaking the obligation to pay Elite Investment $3.86 million, the Debtor was personally obligated on the Hometown Bank Loan via the guaranty and the loan was currently in default.

24. Defendant Fu's February 2022 withdrawal of $400,000.00 from Newelite was treated as the initial installment of the Purchase Price. The final page of the Equity Interest Transfer Agreement memorializes the transaction as follows:

> We, Elite Investment (BVI) Limited, hereby confirm that we have received from Mr. Peng Zhang of United States Dollars Four Hundred Thousand only (USD400,000), the 1st instalment of the Purchase Price under the Equity Interest Transfer Agreement dated October 15, 2022 between Elite Investment (BVI) Limited and Mr. Peng Zhang.
>
> The above payment was made by Newelite Investment Inc. to Mr. Chengjun Fu on Feb 11, 2022 effected on Feb 13, 2022 in form of a personal loan initially. Mr. Peng Zhang will settle the above amount with Newelite Investment Inc. at a later date.

25. The Equity Interest Purchase Agreement called for a second instalment of $1,180,000.00 to Elite Investment on December 31, 2022. By that time, however, the Worcester Properties had gone into foreclosure.

26. On November 1, 2022, Hometown Bank assigned the Mortgage to the Gutierres Family Trust LLC (the "Gutierres Trust"), an entity which purchased the Hometown Bank Loan for the purpose of foreclosing on the Worcester Properties. *See* Worcester Registry of Deeds, Book 68456 Page 182.

27. On November 17, 2022, the Gutierres Trust filed an Affidavit Regarding Note Secured by Mortgage to be Foreclosed For Mortgage which has been Assigned. *See* Worcester County Registry of Deeds, Book 00091 Page 76. The Affidavit indicates that the Gutierres Trust holds the relevant note and mortgage to exercise the statutory power of sale.

28. On November 18, 2022, Lion's Law, acting at the direction of the Defendants filed with the Secretary of the Commonwealth: (i) a Statement of Appointment of Registered Agent changing the registered agent from the Debtor to Connie Dai, an attorney with Lion's Law; (ii) a Statement of Change of Registered Office Address to 145 Wells Avenue, Apartment 1D, Newton, Massachusetts; and (iii) a Statement of Change of Supplemental Information restoring the Debtor to all the officer positions at Newelite.

29. Accordingly, by the end of November 2022, the Defendants had left the Debtor holding the proverbial "bag"; obligated to both the secured creditor via the personal guaranty and Elite Investment on an overpriced equity buyout.

30. On December 21, 2022, the agent for the Gutierres Trust made an open, peaceable and unopposed entry on the Worcester Properties for the purpose of foreclosing on the Mortgage. *See* Worcester County Registry of Deeds, Book 00091 Page 76.

31. On February 1, 2023, Newelite filed a Statement of Change with the Secretary of the Commonwealth changing Newelite's registered office from Lion's Law office to the Debtor's personal residence.

32. On June 7, 2023, the Gutierres Trust filed a Foreclosure Deed with the Worcester County Registry of Deeds transferring the Worcester Properties to a third party for the statement consideration of $3,600,000.00. *See* Worcester County Registry of Deeds, Book 69226 Page 350. The Affidavit accompanying the Foreclosure Deed indicates that the Gutierres Trust published notice of its intent to foreclose in the Worcester Telegram & Gazette on November 29, 2022, December 6, 2022, and December 13, 2022.

33. Upon information and belief, the $3.6 million that the Gutierres Trust received for the Worcester Properties was less than the outstanding debt on the Hometown Bank Loan.

34. On December 20, 2023, Elite Investment commenced a civil action against the Debtor in Worcester Superior Court, styled *Elite Investment (BVI) Limited v. Peng Zhang, et al* Civil Action No. 2385CV01384C. Upon information and belief, a true and accurate copy of the Complaint is attached to Elite Investment's Proof of Claim (the "Elite Complaint").

35. The Elite Complaint alleges that the Debtor made the first installment payment under the Equity Interest Purchase Agreement. Presumably, this was the $400,000.00 "loan"

Defendant Fu took from Newelite in February 2022, which the Debtor agreed to become responsible for paying back to Newelite. If this is true, then the Debtor did not actually pay $400,000.00 in cash to Elite Investment, rather he assumed Defendant Fu's obligation to return $400,000.00 to Newelite.

36.     The Debtor struggled to make the second and third instalments of $1,180,000.00 and $1,185,690.00. He executed a Debt Repayment Undertaking on April 3, 2023 (the "First Undertaking") promising to make the overdue payments by June 30, 2023. On April 18, 2023, the Debtor signed an updated Debt Repayment Undertaking (the "Second Undertaking") modify the payment terms. On June 29, 2023, the Debtor signed a further Debt Repayment Undertaking (the "Third Undertaking" and, together with the First and Second Undertakings, the "Debt Undertakings") whereby he agreed to pay the outstanding sum of approximately $1.08 million before August 2023. The Third Undertaking further provided that the Debtor would pay an additional $100,000.00 as a late fee for every month after August 2023 that he failed to complete the payments.

37.     The Elite Complaint alleges that as of December 2023, the Debtor owed Elite Investment $1,452,238.89, which consisted of $1,052,238.89 of the original purchase price (plus interest) and $400,000.00 in late payments.

38.     On December 29, 2023 Subsea/Newelite was dissolved by order of the Secretary of the Commonwealth.

39.     Elite Investment has obtained a pre-judgment attachment on the Debtor's home.

40.     On June 19, 2024, the Debtor filed a petition for relief in this Court commencing the chapter 13 case (the "Petition Date").

8

41. On August 27, 2024, Elite Investment filed a proof of claim signed by Defendant Fu and listing Lion's Law as the address for notices and payments. *See* Claim No. 15-1. The Claim asserts a debt of $1,452,238.89 against the Debtor for breach of contract, of which $1.1 million is secured by a pre-judgment attachment.

42. Copies of the Debt Undertakings are attached to the proof of claim.

43. The Third Undertaking, which is attached proof of claim at pages 38-41, includes a summary of what the Debtor had paid the Defendants as of July 1, 2023. According to the Third Undertaking, the Debtor had paid $1,288,006 to the Defendants.

44. On his Schedule A/B, the Debtor values his interest in Newelite at $0.00.

## CAUSES OF ACTION

### COUNT I

**AVOIDANCE OF DEBTOR'S OBLIGATIONS UNDER THE EQUITY INTEREST TRANSFER AGREEMENT AND DEBT UNDERTAKINGS AS CONSTRUCTIVE FRAUDULENT TRANSFERS
11 U.S.C. § 548
(DEFENDANT ELITE INVESTMENT)**

45. The allegations in paragraphs 1 through 44 are adopted as if fully set forth herein.

46. This claim for relief arises under section 548(a)(1)(B) of the Bankruptcy Code.

47. The Debtor did not receive reasonably equivalent value in exchange for the obligation he incurred under the Equity Interest Transfer Agreement to pay the Purchase Price for the shares in Newelite. Instead of attempting to value Newelite based on its balance sheet or cash flow, the Purchase Price was derived from what was necessary to allow Defendant Fu to recover his initial investment plus a profit.

48. In October 2022, when the Debtor agreed to purchase Newelite's equity for $3,860,000.00, the entity's only assets, the Worcester Properties, were on the verge of foreclosure.

9

When the Gutierres Trust foreclosed in December 2022 and subsequently sold its foreclosure bid to a third party it received $3,600,000.00. Upon information and belief this was less than the outstanding debt owed on the Mortgage, which had a principal amount of $3,200,000.00. Accordingly, when the Debtor agreed to buy out Defendant Fu, Newelite's equity was worth, at best, less than $300,000 and was more likely worthless.

49. At all times, the Debtor was insolvent or became insolvent as a result of executing the Equity Interest Transfer Agreement and the Debt Undertakings. In the alternative, (i) once the Debtor became obligated to pay the Purchase Price for Newelite, the business was left with unreasonably small capital as evidenced by the subsequent foreclosure two months later; and (ii) by signing the Equity Interest Transfer Agreement and Debt Undertakings the Debtor intended to incur, or believed that he would incur, debts that were beyond his ability to pay as such debts matured.

50. The Debtor and the Defendants knew or should have known that Newelite's equity was worthless at the time they executed the Equity Interest Transfer Agreement. Lion's Law, which represented the Defendants at all relevant times was the registered agent of Newelite and would have had notice of the defaults under the Hometown Bank Loan and the initial foreclosure activity. Indeed, the Equity Interest Transfer Agreement appears to have been a deliberate attempt by Elite Investment and Defendant Fu to push all losses onto the Debtor.

51. The Debtor received nothing of value under the Equity Interest Transfer Agreement. The Debt Undertakings are derivative of the Debtor's obligations under the Equity Interest Transfer Agreement. Accordingly, the Debtor's obligations under the Debt Undertakings are avoidable because the Debtor did not receive reasonably equivalent value in exchange for these obligations and was insolvent or became insolvent when he signed the Debt Undertakings.

52. The Debtor incurred the obligations under the Equity Interest Transfer Agreement and Debt Undertakings within two years of the Petition Date.

53. Based on the foregoing, all the obligations that the Debtor incurred under the Equity Interest Transfer Agreement and Debt Undertakings are avoidable as constructive fraudulent transfers.

## COUNT II

### AVOIDANCE OF ALL PAYMENTS MADE BY THE DEBTOR UNDER THE EQUITY INTEREST TRANSFER AGREEMENT AND DEBT UNDERTAKINGS AS CONSTRUCTIVE FRAUDULENT TRANSFERS
### 11 U.S.C. § 548
### (DEFENDANT ELITE INVESTMENT)

54. The allegations in paragraphs 1 through 53 are adopted as if fully set forth herein.

55. This claim for relief arises under section 548(a)(1)(B) of the Bankruptcy Code.

56. The Debtor's obligations under the Equity Interest Transfer Agreement and Debt Undertakings are avoidable as constructively fraudulent.  Accordingly, any transfers of an interest of the Debtor in property that he made pursuant to such avoidable obligations may themselves be avoided under section 548(a)(1)(B) of the Bankruptcy Code.

57. Upon information and belief, based on the summary of payments set forth in the Third Undertaking, the Debtor transferred $1,288,006.00 to Elite Investment or its designees pursuant to the Equity Interest Transfer Agreement and Debt Undertakings.

58. The Debtor received nothing of value in exchange for these payments he made under the Equity Interest Purchase Agreement and Debt Undertakings and he was insolvent or made insolvent at the time of all such transfers.

59. Accordingly, any transfers of the Debtor's property to the Defendants are avoidable as constructive fraudulent transfers.

11

## COUNT III

**RECOVERY OF ANY FRAUDULENT AND AVOIDABLE TRANSFERS
11 U.S.C. § 550
(AGAINST ALL DEFENDANTS)**

60. The allegations in paragraphs 1 through 59 are adopted as if fully set forth herein.

61. The Plaintiff is entitled to avoid any fraudulent transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code (collectively, the "Avoidable Transfers").

62. Defendant, Elite Investment was the initial transferee of the Avoidable Transfers and Defendant Fu may have been an initial, immediate, or mediate transferee of Elite Investment or the person for whose benefit the Avoidable Transfers were made.

63. Pursuant to 11 U.S.C. § 550(a), the Plaintiff is entitled to recover from the Defendants the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT IV

**DISALLOWANCE OF ELITE INVESTMENTS PROOF OF CLAIM
11 U.S.C. § 502(d)
(DEFENDANT ELITE INVESTMENT)**

64. The allegations in paragraphs 1 through 63 are adopted as if fully set forth herein.

65. Elite Investment has filed Proof of Claim No. 15-1 in this case, asserting a debt of $1,452,238.89.

66. Property is recoverable from Elite Investment under section 550 of the Bankruptcy Code.

67. Elite Investments is a transferee of a transfer avoidable under section 548 of the Bankruptcy Code.

68. Elite Investments has not paid the amount for which it is liable under section 550 of the Bankruptcy Code.

69. Pursuant to section 502(d), the Court shall disallow any proof of claim filed by Elite Investments.

## COUNT V

### EQUITABLE SUBORDINATION
### (DEFENDANT ELITE INVESTMENT)

70. The allegations in paragraphs 1 through 69 are adopted as if fully set forth herein.

71. Section 510(c) of the Bankruptcy Code allows the Court under principles of equitable subordination, to subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

72. Pursuant to its general powers of equity, codified in section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

73. Equitable subordination is appropriate for the claims of creditors who engaged in inequitable conduct that either resulted in injury to the other creditors of a debtor or conferred an unfair advantage on such creditor, so long as subordination of those claims is not inconsistent with the provisions of the Bankruptcy Code.

74. At all relevant times, the Defendants were insiders of the Debtor. Through the use of Elite Investment and Newelite, the Debtor and Defendant Fu entered into a partnership to invest in the Worcester Properties. Defendant Fu, through Elite Investment, exercised control over the Worcester Properties and orchestrated the transactions that led to the Debtor's bankruptcy filing. Upon information and belief, Defendant Fu caused Newelite to become undercapitalized when he

withdrew $400,000.00 from the entity in February 2022, which increased the Debtor's potential exposure under his personal guaranty of the Hometown Bank Loan. Upon information and belief, Defendant Fu coerced the Debtor into signing the Equity Interest Transfer Agreement and the Debt Undertakings to recover his investment. The Debtor's subsequent payments to the Defendants under these documents came at the expense of other creditors with whom he had arms-length dealings. The Defendants actions contributed to the Debtor's insolvency and were ultimately the driving force behind the bankruptcy filing.

75. Despite having access to all the relevant knowledge and information set forth in this complaint, the Defendants have asserted themselves as secured creditors in this action. Despite having already received millions of dollars from the Debtor prior to the petition date, Elite Investment has objected to the Debtor's chapter 13 plans and threatened to bring a nondischareability action against the Debtor. The Defendants actions have delayed confirmation of a plan that would generate a significant recovery to other creditors.

76. At its root, the Elite Investment's claim is derivative of an investment loss incurred by Defendant Fu. It is not a bona fide debt. The Debtor never received millions of dollars from the Defendants and never owned or otherwise received anything of value through Newelite. It is inequitable to permit Elite Investment to continue delaying confirmation of a chapter 13 plan in this case based upon a claim which amounts to an equity investment.

77. Principles of equitable subordination require that any and all claims of Elite Investment be equitably subordinated to all other allowed claims against the Debtor, and such equitable subordination is consistent with the provisions and purposes of the Bankruptcy Code.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court grant the following relief against the Defendants:

1. A finding and order that all obligations the Debtor incurred under the Equity Interest Transfer Agreement and Debt Undertakings are avoidable as fraudulent transfers;

2. A finding and order that any payments the Debtor made to the Defendants pursuant to the Equity Interest Transfer Agreement and Debt Undertakings are avoidable as fraudulent transfers;

3. An order that the Plaintiff may recover any fraudulent transfers plus interest thereon to the date of payment, as well as the costs of this action;

4. An order disallowing Proof of Claim No. 15-1 filed by Elite Investment; and

5. A finding and order that the Claim of Elite Investments is equitably subordinated to all other allowed claims in this case and shall not receive any distribution under a chapter 13 plan until the principal amount of all other allowed claims have been paid in full.

Respectfully submitted,
Standing Chapter 13 Trustee

Dated: March 4, 2026

/s/ *David A. Mawhinney*
David A. Mawhinney, Trustee (BBO# 681737)
P.O. Box 964
Worcester, MA 01613
Tel: (508) 791-3300
Email: davidmawhinney@ch13worc.com